UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

COAL SYSTEMS CORPORATION, : Case No. 1:15-cv-470
*et al.*, :
: Judge Timothy S. Black
Plaintiffs, :
:
v. :
:
PAULA L. HARBOUR, *et al.*, :
:
Defendants. :

**ORDER RESOLVING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT
WITH RESPECT TO PLAINTIFFS' CLAIMS
(Docs. 53, 62, 102)**

This civil action is before the Court on the motion of Plaintiff Carolyn Harbour,

Executrix of the Estate of Earl Harbour, for summary judgment in favor of the Estate

with respect to the ownership of Coal Systems Corporation (Doc. 53); the motion of

Plaintiff Carolyn Harbour, Executrix of the Estate of Earl Harbour, for summary

judgment in favor of the Estate with respect to the ownership of Middlebrook Properties,

Inc. (Doc. 62); Defendants' motion for partial summary judgment as to Plaintiffs' claims

(Doc. 102); and the parties' responsive memoranda (Docs. 64, 68, 72, 81, 99, 100, 103,

105).[1]

---

[1] Plaintiffs have filed a motion for leave to file a sur-reply in opposition to Defendants' motion
for partial summary judgment. (Doc. 106). The Court prefers to decide cases on their merits.
Accordingly, and for good cause shown, Plaintiffs' motion is **GRANTED**. Because Plaintiffs
attached their proposed sur-reply to their motion for leave (Doc. 106-1), Plaintiffs need not re-
file it. Accordingly, in this Order, the Court considers the arguments advanced in the sur-reply.
*See* Section IV.A, *infra*.

## I.    BACKGROUND

This action presents a family dispute regarding the ownership of two closely held corporations, Coal Systems Corporation ("Coal Systems") and Middlebrook Properties, Inc. ("Middlebrook").  Plaintiff Carolyn Harbour is Earl Harbour's widow and the Executrix of his Estate.  Paula Harbour is Earl's daughter.

Earl left his entire estate to Carolyn, who claims that the Estate is the sole owner of Coal Systems and Middlebrook.  Paula makes a competing claim of sole ownership of those entities.  However, Paula does not claim to be the owner by way of inheritance. Paula claims that Earl gifted her all of his stock in Coal Systems sometime in the mid-1990s; and she claims that she has owned Middlebrook since it was founded in 1994.

Soon after Earl's death, Paula prepared and executed Corporate Authorization Resolutions identifying herself as president of Coal Systems and Middlebrook and inquired into the status of their bank accounts.  As a result, those accounts were frozen by the bank.

Carolyn, in her capacity as Executrix of Earl's Estate, and on behalf of Coal Systems and Middlebrook, filed this lawsuit against Paula and her law firm, Paula L. Harbour Attorney at Law, PLCC, alleging various claims. [2]  At present, Carolyn seeks a declaration that the Estate is the sole and rightful owner of Coal Systems and Middlebrook, respectively.  (Docs. 53, 62).  Conversely, Paula seeks an order vesting title

---

[2]  In this Order, the Court does not address the parties' counterclaims.  (*See* Docs. 31, 41).

to Coal Systems and Middlebrook in her name.  (Doc. 102).  Paula also seeks summary

judgment with respect to all of Plaintiffs' claims.  (*Id.*)

## II.     UNDISPUTED FACTS

**A. In Support of the Motion of Plaintiff Carolyn Harbour, Executrix of the Estate of Earl Harbour, for Summary Judgment in Favor of the Estate With Respect to the Ownership of Coal Systems Corporation (Doc. 53)** [3]

1.     As of November 1, 1991, Earl Harbour was the sole owner of all of the issued and outstanding shares of Coal Systems Corporation stock.  (Doc. 53-11).

2.     From 1991 until his death in 2014, Earl made important decisions relating to Coal Systems, maintained the books and records, collected income, paid bills, filed tax returns, updated corporate records, conveyed property to and on behalf of the company, and handled any other affairs of Coal Systems.  (Doc. 53-13).  Earl was also the president of Coal Systems.  (*Id.*)

3.     On October 2, 2007, Earl executed a last will and testament leaving his entire estate to his wife, Carolyn.  (Doc. 53-15).

4.     Earl subsequently executed multiple reaffirmations of his October 2, 2007 will, restating his testamentary intent to leave his entire estate to his wife, Carolyn. (Docs. 53-17, 53-18).

5.     On May 17, 2012, Paula filed an Application for Appointment of Guardian of Alleged Incompetent with the Probate Court of Lawrence County, Ohio, Case No. 2012-GD5155, for the purpose of seeking the appointment of a guardian over Earl's estate and his physical well-being.  (Doc. 53-19).

6.     On May 23, 2012, Earl voluntarily obtained an evaluation by a physician who found him to be perfectly competent and able to care for himself and for his property.   (Doc. 53-16).

7.     On same day Earl was evaluated by a physician and declared competent, he executed yet another last will and testament, again leaving his entire estate to his wife, Carolyn.  (Doc. 53-21).

8.     Earl died on December 30, 2014.  (Doc. 53-23).

---

[3] *See* Docs. 56, 63, 87-4, 97.

9.  At the time of his death, Earl was in possession of, and the Estate now possesses, all stock certificates related to Coal Systems.  (Docs. 53-11, 53-16).

10.  At the time of his death, Earl was in possession of, and the Estate now possesses, all other Coal Systems books and records, including but not limited to the corporate seal, original bylaws and minutes of meetings, tax returns and accounting records, checkbooks, bank statements, letterhead and business cards, and all other corporate records.  (Doc. 53-16).

11.  Earl's daughter, Paula Harbour, now claims that she is the sole owner of all of the issued and outstanding shares of Coal Systems stock.  (Doc. 31).

12.  Paula claims she obtained ownership of the stock via an inter vivos gift from Earl. Paula does not know the date, or even the year, that Earl allegedly made the gift, except to state it was in the mid to late 1990s.  (Doc. 53-27).

13.  Paula does not have possession of any Coal Systems stock certificates.  (Doc. 53-27).

14.  Paula does not have minutes of any stockholders meeting that evidence her attendance as a stockholder.  (Doc. 53-27).

15.  Paula does not recall any dates, locations, topics, or individuals present at any meeting of stockholders of Coal Systems.  (Doc. 53-27).

16.  Other than records she has obtained through subpoena, Paula does not have possession of bank statements or bank signature cards for Coal Systems.  (Doc. 53-27).

17.  On May 17, 2012, in her Application for Appointment of Guardian of Alleged Incompetent, Paula represented to the Lawrence County Probate Court that Earl's estate was worth $2,600,000, comprised of $2,000,000 in personal property and $600,000 in real estate.  (Doc. 53-19).

18.  In 2012, the only way for the value of Earl's personal property could reach the amount of $2,000,000 would be to include the value of Coal Systems and Middlebrook Properties, Inc.  (Doc. 53-13).

19.  Earl's probate estate at the time of his death was $621,151.17, but without Coal Systems his probate estate would only be $121,817.18.  (Doc. 53-1).

4

20.     On January 5, 2015, Paula prepared and executed a Corporate Authorization Resolution purporting to name herself as president of Coal Systems, wherein she misstated the corporation's name and listed an incorrect address in Huntington, West Virginia where Coal Systems is not located and is not authorized to conduct business.  (Doc. 53-24).

21.     On January 5, 2015, Paula prepared, executed, and filed with the Ohio Secretary of State a Statutory Agent Update naming the new statutory agent as being Carter & Company AC, which is a West Virginia corporation that is not licensed to conduct business in Ohio.  (Doc. 53-25).

22.     Carter & Company AC, on Paula's behalf, delivered to Coal Systems' bank the Corporate Authorization Resolution naming Paula as president of Coal Systems and inquired as to the status of the corporation's bank accounts.  (Doc. 53-26).

23.     In response, the bank immediately froze Coal System's bank account and the account remains frozen at this time, leaving Coal Systems unable to pay bills and otherwise conduct business.  (*Id.*)

24.     In July 2007, Earl and his attorney, Marty Stillpass, submitted a Statement of Reason for Exemption from Real Property Conveyance Fee ("Conveyance Exemption Form") to the Auditor of Lawrence County, Ohio under the penalties of perjury.  (Doc. 97-1).

25.     The Conveyance Exemption Form pertains to a July 2007 transfer from Coal Systems to Earl and his wife, Carolyn, and indicates the transfer was "to or from a person when no money or other valuable and tangible consideration readily convertible into money is paid or to be paid for the real estate and the transaction is not a gift."  (*Id.*)

**B. In Support of the Motion of Plaintiff Carolyn Harbour, Executrix of the Estate of Earl Harbour, for Summary Judgment in Favor of the Estate With Respect to the Ownership of Middlebrook Properties, Inc. (Doc. 62)** [4]

1.     Middlebrook Properties, Inc. was formed on November 7, 1994 and the filing listed Paula Harbour as the incorporator, Earl Harbour as the statutory agent, and John M. Bias as the correspondence addressee.  (Docs. 62-3, 62-4).

2.     In 1995, Paula executed a deed as President of Middlebrook.  (Doc. 62-7).

---

[4] *See* Docs. 62-28, 71.

3. On October 2, 2007, Earl executed a last will and testament leaving his entire estate to his wife, Carolyn. (Doc. 62-14).

4. On May 17, 2012, Paula filed an Application for Appointment of Guardian of Alleged Incompetent with the Probate Court of Lawrence County, Ohio, Case No. 2012-GD-5155, for the purpose of seeking the appointment of a guardian over Earl's estate and his physical well-being. (Doc. 62-17).

5. On May 23, 2012, Earl voluntarily obtained an evaluation by a physician who found him to be perfectly competent and able to care for himself and for his property. (Doc. 62-11).

6. On same day Earl was evaluated by a physician and declared competent, he executed yet another last will and testament, again leaving his entire estate to his wife, Carolyn. (Doc. 62-19).

7. Earl died on December 30, 2014. (Doc. 62-21).

8. At the time of his death, certain corporate records of Middlebrook, including blank stock certificates, were in Earl's possession, and are now in the possession and control of the Estate. (Doc. 62-11).

9. Earl's daughter, Paula, claims that she founded Middlebrook and is the sole owner of Middlebrook. (Doc. 62-6).

10. Paula cannot recall any dates, locations, topics, or individuals present at any meeting of stockholders of Middlebrook. (*Id.* at 26).

11. On May 17, 2012, in her Application for Appointment of Guardian of Alleged Incompetent, Paula represented to the Lawrence County Probate Court that Earl's estate was worth an "estimated" $2,600,000, comprised of $2,000,000 in personal property and $600,000 in real estate. (Doc. 62-17).

12. Earl's probate estate at the time of his death was $621,151.17, but without Coal Systems and Middlebrook his probate estate would only be $26,284.38. *(Doc. 62-2).*

13. On January 5, 2015, Paula prepared and executed a Corporate Authorization Resolution identifying herself as president of Meadowbrook Properties Inc [*sic*]. (Doc. 62-22).

14. On January 5, 2015, Paula prepared, executed, and filed with the Ohio Secretary of State a Statutory Agent Update naming the new statutory agent as being Carter & Company AC, which is a West Virginia corporation that is not licensed to conduct business in Ohio. (Doc. 62-23).

15. Carter & Company AC, on Paula's behalf, delivered to Middlebrook's bank the Corporate Authorization Resolution naming Paula as president of Middlebrook and inquired as to the status of the corporation's bank accounts. (Doc. 62-24).

16. In response, the bank immediately froze Middlebrook's bank account. (*Id.*)

**C. In Support of Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Claims (Doc. 102)[5]**

1. Paula Harbour incorporated Middlebrook Properties, Inc. ("Middlebrook") on November 7, 1994. (Doc. 101-1; Doc. 101-2 at 19, 21).[6]

2. Middlebrook's corporate records were maintained in an apartment building located on State Route 7 in Proctorville, Ohio—which was the initial corporate office for Middlebrook (as well as the corporate office for Coal Systems Corporation ("Coal Systems"), another corporation which is the subject of this litigation). (Doc. 101-2 at 59–60; Doc. 101-3 at 11–12).

3. Earl Harbour served as Secretary of Middlebrook. (Doc. 101-5).

4. Since Middlebrook's inception, Paula Harbour has been involved in its operations including, without limitation, paying bills, attending various shareholder and officer meetings, handling litigation matters, and completing various other administrative tasks, like ensuring Middlebrook's assets are adequately insured. (Doc. 101-2 at 56–57; Doc. 101-6 at ¶ 15).[7]

5. In addition to the daily activities, Paula Harbour also handled the acquisition and transfer of real property on behalf of Middlebrook. (Doc. 101-2 at 57; Docs. 101-7, 101-8, 101-9).

---

[5] *See* Docs. 101, 104.

[6] Plaintiffs admit that Paula was named as the incorporator but dispute that Paula was the one who "formed" the corporation. (*See* Doc. 4 at ¶ 13; Doc. 6 at ¶ 13).

[7] With respect to undisputed facts 4 and 5, Plaintiffs deny that Paula "handled" certain matters, as Earl had "handled" those matters.

6.  In 2002, Paula Harbour negotiated and purchased a property near Grundy, Virginia, on behalf of Middlebrook, so that she could reside there while attending law school. (Doc. 101-2 at 51–56; Docs. 101-10, 101-11).[8]

7.  In an effort to purchase the property in Virginia, Paula Harbour utilized, as collateral, a home which she and Earl Harbour owned jointly which was located in Proctorville, Ohio—the same home which, in roughly 2000, became the corporate office for Middlebrook (as well as Coal Systems). (Doc. 101-2 at 51–56, 60–61; Doc. 101-10).

8.  While attending law school, Paula Harbour utilized her own personal stock account to pay the line of credit that was utilized to purchase the home near Grundy, Virginia. (Doc. 101-2 at 54; Doc. 101-9).[9]

9.  In 2005, Paula Harbour sold the home near Grundy, Virginia on behalf of Middlebrook. (Doc. 101-2 at 54–55; Doc. 101-9).

10. In 2005, Middlebrook became involved in litigation arising from Virginia Nichols' failure to make payments on real property purchased from Middlebrook. (Doc. 101-3 at ¶ 16; Doc. 101-13 at 30–31).

11. In 2007, the corporate office was moved, along with all the corporate records, to Earl Harbour's new home in Proctorville, Ohio—the same home he shared with Carolyn Harbour. (Doc. 101-2 at 60–61).

12. The original Middlebrook corporate three-ring binder was last seen in Earl Harbour's home. (This is also true for the binder regarding Coal Systems.) (Doc. 101-3 at 16–17).

13. Unfortunately, neither party can produce a stock certificate evidencing ownership over Middlebrook. (Doc. 101-15 at ¶¶ 23–24).

14. Plaintiffs' former attorney, James Graley, acknowledges his belief that Paula Harbour possessed an ownership interest in Middlebrook. (Doc. 101-16 at 19– 22).

---

[8] Plaintiffs deny that Paula participated in the funding of this property.

[9] Plaintiffs argue that the evidence offered in support of this undisputed fact is inadmissible pursuant to Ohio's "dead man statute," Oho Rev. Code § 2317.03. For the reasons set forth in Section IV.A.1, *infra*, the Court finds that argument is not well-taken.

15. Paula Harbour was involved in the business affairs of Coal Systems, including the management of daily activities, until she attended law school, which limited her ability to participate further. (Doc. 101-2 at 97–98; Doc. 101-6 at ¶¶ 12–13).[10]

16. Around the time Paula Harbour left for law school, Coal Systems' business was no longer as active as it once was—Coal Systems owned a few parcels of real property and possessed some depository and stock accounts. (Doc. 101-2 at 60– 61, 62–63).

## III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly,

---

[10] Plaintiffs argue that the evidence offered in support of this undisputed fact is inadmissible pursuant to Ohio's "dead man statute," Oho Rev. Code § 2317.03. For the reasons set forth in Section IV.A.1, *infra*, the Court finds that argument is not well-taken.

"[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

## IV.   ANALYSIS

### A. Admissibility of Evidence

At the outset, the Court must address the admissibility of certain evidence.  The standard for admissibility is the same at this stage as at trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (to survive a Rule 56 motion, plaintiff must "must come forward with affidavits or other admissible evidence"); *see also* Fed. R. Civ. P. 56(c)(4) (affidavits must, inter alia, "set out facts that would be admissible in evidence").

#### 1.   Applicability of Ohio's Dead Man's Statute

Plaintiffs assert that certain testimony offered by Paula is inadmissible under Ohio's "dead man statute," Ohio Rev. Code § 2317.03.  (*See* Doc. 104).  Ohio Rev. Code § 2317.03 provides that a "party shall not testify when the adverse party . . . is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person[.]"[11]

---

[11] The statute sets forth a number of exceptions to this general rule, which the Court need not address here.

Plaintiffs acknowledge that Ohio Rev. Code § 2317.03 is no longer viable in state court cases.  (Doc. 106-1 at 1–2) (citing *Johnson v. Porter*, 14 Ohio St. 3d 58, 62, 471 N.E.2d 484, 487 (1984) (holding that hold that "the adoption of Evid. R. 601 in 1980 effectively abrogated R.C. 2317.03 which was in conflict with the evidentiary rule"). Nonetheless, they argue that the Ohio Rev. Code § 2317.03 has not been abrogated as it applies to *federal court* cases.  Tellingly, Plaintiffs do not cite to any post-*Johnson* federal court case in which Ohio's "dead man statute" has been applied.

When, as here, a federal court sits in diversity, state law governs substantive issues and federal law governs procedural issues.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Rules of evidence are deemed rules of procedure, 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 4512 (2d ed.1996), and therefore, the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings.  *Barnes v. Owens—Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000).  Fed. R. Evid. 601 states as follows:

> Every person is competent to be a witness unless these rules provide otherwise. <u>But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision</u>.

(emphasis added).  Accordingly, the Court finds that *Johnson* controls and that the dead man's statute (a rule of competency) is not applicable.[12]

---

[12] The Court recognizes that the Federal Rules of Evidence do not have a provision similar to Ohio Evid. R. 804(B)(5) which provides an exception to the hearsay rule for statements made by a decedent which are offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent.  Accordingly, Plaintiffs may not present any statements made by Earl to rebut Paula's testimony unless it can be demonstrated that: (1) the statements are not hearsay; or (2) an exception to the hearsay rule applies.

## 2. *Statements Made by Earl*

Plaintiffs also challenge as hearsay Paula's use of various statements allegedly made by Earl during his lifetime regarding the ownership of Coal Systems and Middlebrook. Defendants argue, in turn, that these statements are not hearsay, as they are statements offered against an opposing party. *See* Fed. R. Evid. 801(d). Defendants contend, without citation, that this is the case because the Estate "stands in the shoes" of Earl. In the absence of supporting case law, and in light of the fact that Earl, himself, is not a party to this lawsuit, the Court does not find this argument persuasive.

Defendants also argue that Earl's statements are admissible pursuant to Rule 804(b)(3), which provides an exception to the hearsay rule for a statement which:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true <u>because, when made, it was so contrary to the declarant's proprietary or pecuniary interest</u> or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness[.]

(emphasis added).[13] Earl's alleged statements that Paula owned Coal Systems and Middlebrook were against Earl's pecuniary interest, to the extent he also claimed an ownership stake in those companies. However, Defendants do not carry their burden to prove that these alleged statements are supported by corroborating circumstances indicating trustworthiness. *See United States v. Arnold,* 486 F.3d 177, 206 (6th Cir.

---

[13] This exception to the hearsay rule is only applicable where, as here, the decedent is unavailable. (*Id.*)

2007) (quoting *United States v. Kendrick,* 853 F.2d 492, 496 n. 3 (6th Cir.1988) ("'[T]he burden of proving that the statement fits squarely within a hearsay exception' rests with the proponent of the hearsay exception"); *see also United States v. Day,* 789 F.2d 1217, 1221 (6th Cir.1986) ( noting that the proponent also bears the burden of demonstrating each element of a given exception or exclusion). While Defendants make no argument with respect to trustworthiness, Plaintiffs point out reasons why these alleged statements are *not* trustworthy. (Doc. 103 at 17). Accordingly, the Court finds that Earl's alleged statements that Paula owned Coal Systems and Middlebrook are not admissible.[14]

### 3. *Relevance*

Defendants seek the exclusion of various pieces of evidence presented by Plaintiffs because they are irrelevant. (Doc. 105 at 5–7). Only evidence that is relevant is admissible at trial. Fed. R. Evid. 402. However, evidence is relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). In light of this permissive standard, which Defendants fail to address, the Court finds that Defendants' arguments with respect to relevance are not well-taken.

---

[14] Similarly, the Court also declines to consider statements Earl allegedly made acknowledging his ownership in Coal Systems to James Graley and Fonda Eastham and in an affidavit submitted to the Lawrence County Treasurer. Defendants challenge these statements on hearsay grounds. Plaintiffs assert, without discussion, that such statements are admissible under Rule 803(6) (records of regularly conducted activity); Rule 803(8) (public records); Rule 803(14) (records of documents that affect an interest in property); Rule 803(15) (statements in documents that affect and interest in property); and Rule 807 (residuary exception). Without any substantive argument, Plaintiffs do not carry their burden to demonstrate admissibility by way of a hearsay exception.

### B.  Ownership of Coal Systems

Plaintiffs contend that the analysis of the ownership of Coal Systems begins with the presumption that Earl owned, and his Estate now owns, the stock in Coal Systems. Plaintiffs argue that Earl, and now the Estate, is presumed to be the owner, because (1) prior to the alleged gift, Earl was the sole owner of all Coal Systems stock; and (2) Earl possessed the original, executed stock certificates evidencing his ownership of Coal Systems, while Paula does not have any stock certificates in her possession to suggest that she owns the company.

The Court agrees that once ownership of stock has been established, it is presumed to continue until it is proven that the owner divested himself of the stock.  *Algren v. Algren*, 916 N.E.2d 491, 495 (Ohio Ct. App. 2009).  Here, it is undisputed that Earl was the sole owner of Coal Systems stock as recently as 1991.  Moreover, "[p]ossession of [stock] certificates generally creates . . . a presumption that the holder is the owner of the represented shares."  *Id.* at 496.  Since the Estate is in possession of the original stock certificates of Coal Systems reflecting ownership in the name of Earl Harbour, and Paula admittedly does not possess any stock certificates for Coal Systems in her own name, there is a presumption that Earl owned, and the Estate now owns, the shares.

Paula, however, contends that Earl gave her the Coal Systems stock by way of *inter vivos* gift sometime in the mid-1990s.  Having established the presumption that the Estate is the current owner of the Coal Systems stock, the burden is on Paula to prove, by clear and convincing evidence, that Earl gifted the stock to her.  *Algren*, 916 N.E.2d at 497; *see also Smith v. Shafer*, 623 N.E.2d 1261, 1263 (Ohio Ct. App. 1993) ("The burden

14

of showing that an inter vivos gift was made is on the donee by clear and convincing evidence.").  To meet this burden, <u>Paula must prove three elements by clear and convincing evidence</u>:  (1) Earl's intention to part with his stock; (2) Earl's delivery of the stock by relinquishing dominion and control over the company; and (3) Paula's acceptance of the stock.  *Algren*, 916 N.E.2d at 495.

Plaintiffs contend that Paula cannot prove these required elements, because Earl never delivered his Coal Systems stock to Paula so as to complete the purported gift.  <u>"Perhaps the best evidence (the most specific and definite) of delivery is actual physical delivery of the thing given (*e.g.*, handing over a book, given as a gift)."</u>  *Algren*, 916 N.E.2d at 495.  (emphasis added).  "While such evidence alone is not dispositive, it strongly suggests that a gift was made."  *Id.*

In the present case, Earl did not physically deliver the stock certificate to Paula.  Rather, he placed the certificate in the binders behind his desk, where they remained for the rest of his life.  However, delivery of the stock certificates is <u>not</u> necessary to complete the alleged gift of Coal Systems stock.  *Algren*, 916 N.E.2d at 495.  The delivery requirement is fundamentally about relinquishing ownership and control.  *Id.*  Thus, the delivery requirement might also be satisfied in constructive or symbolic form.  *Id.* at 496.  "The key to delivery, and thus a completed gift, is for the one making the gift to do something that shows he gave up ownership and control in favor of the recipient."  *Id.*

"Because a certificate only represents a share, one does not need a certificate in hand to prove ownership."  *Algren*, 916 N.E.2d at 496.  As the court explained in *Algren*,

15

"[t]he existence and transfer of certificates may be the clearest evidence—the best evidence—of a completed gift of corporate stock, but such evidence is not required as a matter of law." *Id.* at 497. Rather, "what is required for a completed gift is *clear and convincing evidence* that the one who intended to make a gift of corporate stock *in fact relinquished ownership and control*." *Id.* (emphasis added). The clear and convincing standard is an elevated, relatively stringent evidentiary standard requiring a determination of "whether the evidence is fit to induce conviction in the minds of reasonable persons." *Millers Bottled Gas Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir. 1992).

Plaintiffs contend that Defendants cannot meet their burden of demonstrating by clear and convincing evidence that Earl in fact relinquished ownership and control of Coal Systems. The Court agrees. Although Defendants contend that Earl signed stock certificates transferring the Coal Systems stock entirely to Paula, according to deposition testimony, he placed the certificates in a binder behind his desk; he never actually gave them to Paula. Moreover, no one has been able to actually locate or produce any stock certificates transferring Earl's interest to Paula, and there is no other evidence in the corporate records indicating that the stock was ever transferred to Paula.

Paula admits in her discovery responses that despite allegedly owning the company for twenty years, she cannot produce any documents suggesting that she is the owner of Coal Systems. In fact, Paula admits that she does even not know the date that Earl transferred his entire ownership stake in Coal Systems to her, claiming only that the transfer occurred sometime in the mid-1990s.

Defendants contend, however, that Jill Turner, Earl's former secretary, prepared shareholder minutes for shareholder meetings following the alleged transfer, listing Paula Harbour as the sole shareholder of Coal Systems. Paula submits an affidavit stating that she signed the shareholder minutes as the sole shareholder of Coal Systems. However, no such shareholder minutes have been located or produced. Moreover, despite Paula's allegation that she attended shareholder meetings, Paula does not recall any dates, locations, topics, or individuals present at any meeting of stockholders of Coal Systems.

Defendants also argue that Earl made representations to third parties regarding Paula's interest in Coal Systems. Defendants point to a handwritten note from Bruce Stout, Earl Harbour's estate planning attorney in 2001, which includes a notation indicating "stock in comp" in the amount of $250,000. Defendants contend this is evidence that Earl Harbour represented to his estate planning attorney that he only possessed $250,000 worth of stock in a closely held company. The Court does not agree that the handwritten note provides such evidence, as the handwritten notation is an informal document that does not indicate anywhere that it is based on Earl's representations, and does not specifically indicate what the $250,000 figure was intended to represent.

Defendants also submit an affidavit from Linda Rice, an attorney whom Earl had consulted regarding a dispute with the Lawrence County Treasurer's Office regarding the assessment of a number of parcels of real property. Rice declined to accept the representation, but advised Earl that an officer/shareholder could appear before the county tax tribunal. Further, Paula states in her affidavit that she did in fact appear at the

17

relevant tax hearing to represent Coal Systems, and that such representation is additional evidence that she is the sole shareholder of Coal Systems.

The Court, however, does not agree that such evidence provides clear and convincing evidence—that is, evidence fit to induce conviction in the minds of reasonable people—that Earl *in fact* relinquished ownership and control of Coal Systems. First, it is undisputed that Earl continued to run Coal Systems from 1991 through his death in 2014, making important decisions, maintaining the books and records, collecting the income, paying the bills, filing the tax returns, updating the corporate records with the Ohio Secretary of State, conveying and selling property to and on behalf of company, and handling other aspects of the business. This evidence tends to indicate that Earl did *not* relinquish ownership and control. Second, the fact that Paula attended a tax hearing on behalf of Coal Systems also is not clear and convincing evidence, as there is no evidence that she attended in the capacity of sole shareholder, other than her self-serving affidavit. An unsupported, self-serving affidavit is insufficient to create an issue of fact sufficient to survive summary judgment. *Brooks v. American Broadcasting Companies*, 999 F.2d 167, 172 (6th Cir. 1993); *Wolfe v. Vill. of Brice*, Ohio, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999).

Whereas Defendants have failed to produce clear and convincing evidence in support of their contentions, Plaintiffs have produced affirmative evidence indicating that Paula acknowledged in 2012 that Earl owned Coal Systems. In 2012, Paula sought to have Earl deemed incompetent through court proceedings. On May 17, 2012, in her Application for Appointment of Guardian of Alleged Incompetent, Paula represented to

18

the Lawrence County Probate Court that Earl's estate was worth $2,600,000, comprised of $2,000,000 in personal property and $600,000 in real estate. It is undisputed, however, that in 2012, the only way that the value of Earl's personal property could reach the amount of $2,000,000 would be to include the value of Coal Systems and Middlebrook Properties, Inc. Defendants do not offer any explanation as to why Paula included the Coal Systems value in the estimate of Earl's estate, if in fact she was the owner of Coal Systems in 2012. Thus, Paula's representation in the 2012 filing is tantamount to an admission that Earl in fact did *not* give her the Coal Systems shares, as she now alleges.

Accordingly, the Court agrees that Defendants have not and cannot meet their burden of presenting clear and convincing evidence that Earl in fact relinquished ownership and control of Coal Systems. Because Defendants have not met their burden of presenting evidence from which a jury could find an *inter vivos* gift by clear and convincing evidence, the Estate is entitled to summary judgment with regard to the ownership of Coal Systems' stock.

The Court concludes that the Estate of Earl Harbour is the rightful and sole owner of Coal Systems Corporation.

### B. Ownership of Middlebrook

Unlike the dispute over Coal Systems, the dispute over Middlebrook does not involve an alleged *inter vivos* gift. Both parties claim to have owned Middlebrook since it was incorporated in 1994. Also, unlike Coal Systems where there are stock certificates evidencing Earl Harbour's ownership, there are no Middlebrook stock certificates evidencing ownership by either party. For these reasons, the Middlebrook dispute does

19

not begin with a presumption that the Estate is the owner of the shares, and the Middlebrook dispute does not require Paula to meet a clear and convincing evidence standard.

Based upon the evidence before the Court, there remains a genuine dispute of material fact over which party is the legal owner of Middlebrook. Each party has presented evidence to support its claim of ownership.

Plaintiffs have provided evidence supporting the claim that the Estate of Earl Harbour is the rightful owner of Middlebrook. Plaintiffs were in possession of Middlebrook stock certificates (although those certificates were blank, unlike the Coal Systems stock certificates naming Earl Harbour as the owner). Earl Harbour was named the initial, statutory agent of Middlebrook. (Doc. 62-4, at 3). Middlebrook was funded by Earl Harbour's personal assets, including a transfer of real estate from Coal Systems, which the Court has already determined as a matter of law that Earl owned until his death. (*See* Doc. 62-5, at 1). According to an affidavit from Carolyn Harbour, Earl Harbour also liquidated a significant portion of Middlebrook's assets during his lifetime for his personal use with no complaint from Paula Harbour. (Doc. 62-12, at 2).

Conversely, Defendants have provided evidence supportung the claim that Paula Harbour is the rightful owner of Middlebrook. Like their evidence purporting to demonstrate Paula Harbour's ownership of Coal Systems, Defendants' evidence supporting their claim that Paula Harbour owns Middlebrook is mostly in the form of affidavit testimony, as Defendants admit they can produce no documentary evidence that supports their claim. Specifically, Defendants offer the deposition testimony of Jill

Turner, who claims that she drafted stock certificates for Middlebrook that reflected Paula Harbour's sole ownership (Doc. 101-3, at 3), as well as Paula Harbour's own testimony that she has always been Middlebrook's sole owner and contributed to the company's initial funding. (Doc. 101-2, at 2). Paula was also listed as Middlebrook's incorporator on the company's articles of incorporation; although not necessarily indicative of ownership, that does demonstrate that Paula, as well as Earl, was heavily involved in Middlebrook's operation at one time. (Doc. 62-4. at 2).

Here, where there is no presumption of ownership as in the case of Coal Systems, both parties have presented evidence of ownership sufficient to form a genuine dispute of material fact as to the rightful owner of Middlebrook, and a jury could evaluate the evidence and reasonably find for either side. Accordingly, both Plaintiffs' and Defendants' motions for summary judgment are denied with respect to declaring ownership of Middlebrook.

### C. Legal Malpractice/Negligence Claim

Defendants' motion for partial summary judgment requests that the Court deny Plaintiffs' claim against Defendant Paula Harbour for legal malpractice. (Doc. 102-1, at 16).

Plaintiffs argue that there is privity in this case because Paula Harbour was an officer of Middlbrook at the time of the real estate transfer in question, and was therefore a fiduciary of the company at the time she retained her own law practice to perform the legal services relating to the real estate transfer, citing *Arpadi v. First MSP Corp.*, 628 N.E.2d 1335 (Ohio 1994) ("[A]n attorney retained by a fiduciary owes a similar duty to

21

those to whom the client has a fiduciary relationship."). However, *Arpadi* dealt with a duty imputed to other members of a limited partnership, and the above-quoted holding has since been specifically held not to apply to corporations. *See Fornshell v. Roetzel*, 8th Dist. Cuyahoga No. CV-583417, 2009-Ohio-2728, ¶¶ 53–54. Therefore, Defendant Paula L. Harbour, Attorney at Law, PLCC, did not have privity with any of the Plaintiffs.

Plaintiffs also argue that they may properly advance a claim of legal malpractice because the facts show that Paula Harbour acted maliciously. However, Plaintiffs failed to plead malice as it pertains to their legal malpractice claim. Plaintiffs' legal malpractice claim alleges only that Defendants "breached their duties to Middlebrook by negligently preparing documents purporting to take actions for Middlebrook that were not authorized." (Doc. 4, at 15). *See Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 229, 2008-Ohio-2012, ¶ 11, 887 N.E.2d 1167, 1170 (Ohio 2008) (upholding a dismissal of a legal malpractice claim because claimants, inter alia, failed to plead fraud or malice in regards to the claim). Plaintiffs' claim is even titled "Legal Malpractice/Negligence" in the Complaint, further evidencing that no malice was alleged with regard to the legal representation at issue. (Doc. 4, at 15). Therefore, the malice exception to the requirement for privity in a legal malpractice claim does not apply in this case.

Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiffs' claim of legal malpractice.

### D. Fraud Claim

Defendants' motion for partial summary judgment also requests that the Court deny Plaintiffs' claim against Defendants for fraud. (Doc. 102-1, at 18). In the

Complaint, Plaintiffs allege that Paula Harbour committed fraud by "falsely represent[ing] to Coal Systems' lending institutions, the Ohio Secretary of State, the Lawrence County Recorder, Virginia R. Nichols, and, upon information and belief, other third parties, that she is the sole owner of Coal Systems and Middlebrook stock, that she is president of Coal Systems, that she has the authority to act on behalf of the companies, and that she is entitled to the assets and property rights of the companies." (Doc. 4, at 14).

Defendants argue that Plaintiffs lack standing to bring this claim, insinuating that the only proper parties for a fraud claim are those third parties to whom Paula Harbour allegedly made misrepresentations. This argument is meritorious. Under Ohio law, a plaintiff must prove the following elements to establish a fraud claim: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) the representation was material to the transaction, (3) the representation was made falsely, with knowledge of its falsity, or with such disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) the representation was made with the intent of misleading another into relying on it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.,* 700 N.E.2d 859 (Ohio 1998). Furthermore, "[t]he elements of fraud *must be made against the alleged victim* . . . . A plaintiff fails to state a valid cause of action for fraud when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance." *Moses v. Sterling Commerce Am.., Inc.*, 10th Dist. Franklin No. 02AP-161, 2002-Ohio-4327, at ¶ 21 (emphasis added); *see also Wiles v. Miller*, 10th Dist. Franklin No. 12AP-989, 2013-Ohio-3625, at ¶¶ 33–34.

23

Here, Plaintiffs have alleged no facts to support their bringing a claim of fraud, because there is no accusation that Defendants made any misrepresentations to Plaintiffs. The only alleged misrepresentations in this case were made to third parties that are not part of this action.  Plaintiffs therefore lack standing to bring a fraud claim based on those alleged misrepresentations.

Accordingly, Defendant's motion for summary judgment on Plaintiffs' fraud claim is granted.

### E.  Plaintiffs' Remaining Claims

Defendants move for summary judgment with respect to all of Plaintiffs' remaining claims on the ground that they are ancillary in nature and cannot stand absent a declaration that Paula has no ownership interest in either Coal Systems or Middlebrook. As set forth above, the Court concludes that the Estate of Earl Harbour is the rightful and sole owner of Coal Systems Corporation.  However, genuine issues of material fact prevent this Court from making a determination upon summary judgment as to the parties' claims with respect to ownership of Middlebrook.  Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' remaining claims.

### IV.   CONCLUSION

Wherefore, for these reasons:

1. The motion of Plaintiff Carolyn Harbour, Executrix of the Estate of Earl Harbour, for summary judgment in favor of the Estate with respect to the ownership of Coal Systems Corporation (Doc. 53) is **GRANTED**;

2. The motion of Plaintiff Carolyn Harbour, Executrix of the Estate of Earl Harbour, for summary judgment in favor of the Estate with respect to the ownership of Middlebrook Properties, Inc. (Doc. 62) is **DENIED**;

3. Defendants' motion for partial summary judgment as to Plaintiffs' claims (Doc. 102) is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order.

**IT IS SO ORDERED**.

Date:  8/25/16

_s/ Timothy S. Black_
Timothy S. Black
United States District Judge